In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-08-00544-CR


____________________



MELVIN WAYNE POWELL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 99497






 MEMORANDUM OPINION


 Melvin Wayne Powell appeals his conviction for aggravated robbery, claiming that
neither legally nor factually sufficient evidence support the jury's verdict, that his counsel
was ineffective, and that the trial court erred in admitting into evidence an unsigned
judgment pertinent to a prior felony conviction. We affirm the judgment.

Background 


 Around 12:30 a.m. on November 15, 2006, Carlos Sanchez and his wife, Norma,
heard a knock at his door. Norma looked out the window and then told Carlos that she
thought the man at the door was the person who had tried to sell them a bicycle several days
earlier. When Carlos opened the door, the man forcibly entered their home, held a knife to
Carlos's throat, and demanded money. Norma handed the intruder her purse, and he took the
money from it. During a subsequent photographic lineup, Carlos, with Norma's assistance,
identified Powell as the person who robbed him on the prior evening. Norma also viewed
the photo lineup and identified Powell as the man who had offered to sell them the bicycle. (1)
The array consisted of six photos depicting people of similar build, shape, size, and age.

 At trial, Carlos was not certain he could identify Powell as the robber, but stated
instead that "it seems like it's him." Norma, however, identified Powell as the robber. She
testified that on November 15, 2006, she awoke when she heard a knock at the door of her
home. When she looked out the window, she told Carlos, "It's the American who came to
try to sell me a bicycle." At trial, Norma identified Powell as the person who forcibly entered
her home on November 15, held a knife to her husband's throat, and took money from her
purse. During the photo lineup, she identified Powell as the man who had offered to sell
them a bicycle. 

 At trial, the State also called as witnesses the two Port Arthur Police Department
detectives who used a trained dog to follow the intruder's scent from the Sanchez home. 
Detective Holmes and Detective Sterling explained how they attempted to track the person
who had robbed Carlos and Norma by using a bloodhound named Boudreaux. According
to the detectives, Boudreaux followed a trail from the robbery scene but then lost the trail
near an apartment complex. The detectives, however, had been provided with a description
of the robber. Because they knew that Powell matched some aspects of the description and
because Powell's sister lived in the apartment complex nearby, the detectives went to her
apartment to see if Powell was there. Although Powell's sister denied he was there,
Detective Sterling subsequently found Powell during a search of the apartment. (2) Detective
Sterling found a knife in Powell's pocket. Based upon an outstanding warrant for another
offense, the detectives took Powell into custody. 

 At trial, Powell produced his nephew, Brandon Powell, as an alibi witness. According
to Brandon, at the time of the robbery on November 15, he and Powell were playing video
games at his grandmother's home in Port Arthur. During his testimony, however, Brandon
admitted that several days before the robbery he had lied to the police about Powell's
whereabouts when they had come to Brandon's home seeking to take Powell into custody. 
 The jury found Powell guilty of aggravated robbery, a first degree felony. Tex. Pen.
Code Ann. § 29.03(a)(2), (b) (Vernon 2003). In assessing punishment, the jury also found
that Powell had been previously convicted of two prior felonies and assessed Powell's
punishment at ninety-nine years in prison. See Tex. Pen. Code Ann. § 12.42(d) (Vernon
Supp. 2009) (3)
 (providing the enhancement in cases involving two prior final felony
convictions is a sentence of life, or a term of not more than ninety-nine years or less than
twenty-five years). 

Legal and Factual Sufficiency


 When assessing the legal sufficiency of the evidence in a criminal case, we review all
of the evidence in a light most favorable to the verdict and determine whether, based on the
evidence and reasonable inferences from the evidence, rational jurors could have found the
essential elements of the crime beyond a reasonable doubt. See Roberts v. State, 273 S.W.3d
322, 326 (Tex. Crim. App. 2008) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)). With respect to a complaint about the evidence's factual
sufficiency, we review the evidence in a neutral light. Id. at 327. "Evidence can be factually
insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that
the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as to render
the verdict clearly wrong and manifestly unjust." Roberts v. State, 220 S.W.3d 521, 524
(Tex. Crim. App. 2007), cert. denied, 552 U.S. 920, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007). 
The reviewing court may not reverse for factual sufficiency if "'the greater weight and
preponderance of the evidence actually favors conviction.'" Id. (quoting Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006)). While the appellate court may "second-guess
the [factfinder] to a limited degree, the review should still be deferential, with a high level
of skepticism about the [factfinder's] verdict required before a reversal can occur." Id.
(citing Watson, 204 S.W.3d at 417; Cain v. State, 958 S.W.2d 404, 407, 410 (Tex. Crim.
App. 1997)). In examining a factual sufficiency challenge, we defer to the factfinder's
determination of the credibility of the evidence. Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003).

 Under Texas law, a person commits the offense of robbery if, in the course of
committing theft and with intent to obtain and maintain control of property, that person "(1)
intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally
or knowingly threatens or places another in fear of imminent bodily injury or death." Tex.
Pen. Code Ann. § 29.02 (Vernon 2003). The offense of robbery may become an aggravated
robbery in several ways, including when the person causes serious bodily injury to another
or uses or exhibits a deadly weapon. Id. § 29.03(a)(1), (2). A knife, used in the manner
described by Carlos, falls within the Penal Code's definition of a deadly weapon. See id. §
1.07(a)(17)(B) (Vernon Supp. 2009) (4) (defining deadly weapons to include "anything that in
the manner of its use or intended use is capable of causing death or serious bodily injury");
see also McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (explaining that a
knife can be a deadly weapon when used in a threatening manner). 

 Powell asserts that the evidence is legally and factually insufficient to support the
jury's verdict because the evidence of his identification was unreliable. In addition to
challenging the reliability of his "canine identification," Powell challenges the identifications
of him by Norma and Carlos. According to Powell, poor lighting and the short amount of
time that Norma and Carlos actually spent with the robber make their identifications
unreliable. Powell thus asserts that the State's identification evidence demonstrates various
weaknesses that result in its being legally insufficient. We disagree.

 In a legal sufficiency challenge, we view the evidence in the light most favorable to
the jury's verdict. Roberts, 273 S.W.3d at 326. Viewed in this light, the evidence discloses
that Powell was identified by an eyewitness, Norma. Norma based her identification on two
events - her initial contact approximately one week before the robbery with a person who
had attempted to sell her a bicycle; and second, her opportunity to view the robber
immediately before and during the robbery. Norma's explanation of how she was able to
identify the perpetrator is in the trial record, and Norma testified at the trial that she
recognized Powell on the night of the robbery. Norma also explained that during the
robbery, the lights inside her home were on, and that she looked at Powell during the robbery
when he demanded her purse. We are not persuaded that Norma's in-court identification of
Powell was tainted by the photo array used in the investigation. See Herrera v. State, 682
S.W.2d 313, 318 (Tex. Crim. App. 1984).

 The testimony of a single eyewitness, such as Norma, can provide sufficient support
for a felony conviction. See Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982);
Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); see also Johnson v. State, 176
S.W.3d 74, 78 (Tex. App.-Houston [1st Dist.] 2004, no pet.). We hold that Norma's
eyewitness account, in which she explained how she identified Powell as the robber, provides
legally sufficient evidence to support Powell's conviction. Thus, because Powell's
conviction is supported by legally sufficient proof through Norma's testimony, we need not
address Powell's other legal-sufficiency arguments that relate to his concerns about other
identification evidence. See Tex. R. App. P. 47.1. After viewing the evidence in the light
most favorable to the verdict, we find that a rational trier of fact could have found beyond
a reasonable doubt that Powell committed robbery, and that he did so by using a knife as a
deadly weapon. We therefore find the evidence legally sufficient to support the jury's
verdict. 

 We construe Powell's first issue as also complaining that the evidence is factually
insufficient to support the jury's verdict. While Powell combined his legal and factual
sufficiency arguments under a single issue, his argument concerning the quality of the
identification evidence implies that he intended to complain that the evidence is so weak that
the resulting verdict was clearly wrong. See Tex. R. App. P. 38.9.

 In a factual sufficiency review, we view all of the evidence in a neutral light and ask
whether the evidence, although legally sufficient, is nevertheless "so weak that the verdict
seems clearly wrong and manifestly unjust," or is "outweighed by the great weight and
preponderance of the contrary evidence so as to render the verdict clearly wrong and
manifestly unjust." Roberts, 220 S.W.3d at 524. Further, we defer to the factfinder's
determinations about the credibility of the witnesses. Swearingen, 101 S.W.3d at 97;
McKinny v. State, 76 S.W.3d 463, 469 (Tex. App.-Houston [1st Dist.] 2002, no pet.). We
have already explained why Norma's identification was legally sufficient to support Powell's
conviction. Even when the evidence is reviewed in a neutral light, Powell's conviction,
when we consider Norma's testimony that Powell committed the robbery, does not appear
to us to be either clearly wrong or manifestly unjust. See Roberts, 220 S.W.3d at 524. 

 Issue one also advances a complaint concerning the weight that should have been
given to the testimony of Powell's alibi witness. That argument focuses on conflicting
evidence, the second type of factual sufficiency challenge. Addressing the identification
testimony in a neutral light, we observe that while Carlos was tentative in his identification
of Powell, (5) Norma was not. (6) Although Powell presented an alibi defense, "what weight to
give contradictory testimonial evidence is within the sole province of the jury, as it turns on
an evaluation of credibility and demeanor." Johnson, 176 S.W.3d at 78 (citing Cain, 958
S.W.2d at 408-09)). In factual sufficiency reviews, we remain deferential to the jury's right
to weigh the credibility of the witnesses. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim.
App. 1996). 

 In this case, the jury may have discounted the credibility of Powell's alibi witness for
several reasons, including: (1) the alibi witness was Powell's nephew; (2) the alibi witness
admitted that he and his grandmother previously helped to hide Powell from being arrested on
an outstanding parole warrant; and (3) the alibi witness admitted that on the day the robbery
occurred he lied to the police about Powell's whereabouts to protect Powell from being
arrested. Reviewing the evidence in a neutral light, we conclude that the jury could reasonably
refuse to accept Powell's alibi that he was at another location when the robbery occurred. 
Therefore, in our opinion, the jury's decision to convict Powell of aggravated robbery was not
clearly wrong or manifestly unjust, nor can we conclude that the great weight and
preponderance of the evidence contradicts the jury's verdict. See Watson v. State, 204 S.W.3d
at 414-17. We hold that the evidence is factually sufficient to support Powell's conviction.

 Having considered all of Powell's legal and factual sufficiency arguments, we overrule
Powell's first issue. 

Ineffective Assistance
 

 In a single argument for issues two through four, Powell asserts he received ineffective
assistance of counsel. Issue two contends Powell's trial attorney failed to properly investigate
and challenge the State's canine evidence; issue three contends Powell's attorney was
ineffective because he failed to obtain a canine expert of his own; and issue four contends the
"inaction" of Powell's counsel at various stages of the trial make the jury's verdict unreliable. 

 We review claims of ineffective assistance of counsel under well established law. The
Texas Court of Criminal Appeals recently reiterated the Strickland standard for ineffective-assistance claims as follows:

 To succeed on an ineffective-assistance claim, the defendant must show
that: (1) counsel's performance was deficient and (2) the deficient performance
prejudiced the defense. To show deficient performance, the defendant must
prove by a preponderance of the evidence that his counsel's representation fell
below the standard of professional norms. To demonstrate prejudice, the
defendant must show a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. 


Garza v. State, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007) (footnotes omitted) (citing
Strickland v. Washington, 466 U.S. 668, 687-88, 694,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). 
A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). But, as Garza explained, our
review of ineffective-assistance claims is "highly deferential" to trial counsel as we presume
"that counsel's actions fell within the wide range of reasonable and professional assistance."
Garza, 213 S.W.3d at 348 (citing Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002);
Chambers v. State, 903 S.W.2d 21, 33 (Tex. Crim. App. 1995)). 

 Issues two and three complain that counsel failed to effectively challenge the
admissibility of the "trailing dog" evidence presented through police officers and failed to
obtain an expert to contest the evidence's strength. The bloodhounds, however, failed to
successfully trail Powell. Instead, an eyewitness identified Powell as the robber. Additionally,
the record does not reveal the existence of any witnesses who would have contradicted the
officers' testimony about the bloodhounds' efforts to trail Powell. Absent such a showing, and
a record that demonstrates witnesses who would have provided testimony beneficial to Powell,
a claim of ineffective assistance of counsel fails. See Wilkerson v. State, 726 S.W.2d 542, 551
(Tex. Crim. App. 1986) ("Absent a showing that potential defense witnesses were available,
and that their testimony would benefit the defense, counsel's failure to call witnesses is of no
moment."); Wade v. State, 164 S.W.3d 788, 796 (Tex. App.-Houston [14th Dist.] 2005, no
pet.).

 With respect to issue four, Powell also makes several additional arguments in asserting
his claim of ineffectiveness of counsel. Specifically, he asserts that his trial attorney should
have requested several additional jury instructions; that trial counsel should have objected to
the State's use of an unsigned judgment for enhancement purposes; that his trial attorney
volunteered during voir dire that Powell had committed several extraneous offenses; (7) and that
in final argument, his trial attorney made "an unnecessary reference to [Powell's] failure to
testify." (8)

 When facing complaints about a trial lawyer's alleged deficiencies in a trial, we do not
judge counsel's strategic decisions in hindsight. Thompson, 9 S.W.3d at 813. Trial counsel's
decisions are viewed with great deference when trial counsel's reasons for not undertaking a
suggested strategy do not appear in the record. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005). "'[T]rial counsel should ordinarily be afforded an opportunity to explain
his actions before being denounced as ineffective.' Absent such an opportunity, an appellate
court should not find deficient performance unless the challenged conduct was 'so outrageous
that no competent attorney would have engaged in it.'" Id. (citations omitted). 

 In this case, Powell did not file a motion for new trial. Trial counsel's decisions may
have been grounded on a reasonable appreciation of a reasonable trial strategy given the
specific facts and circumstances attendant to this trial. Because there is insufficient evidence
in the record to allow trial counsel to explain his strategy, we may not, based on the present
record, conclude that the performance of Powell's trial attorney was deficient. (9) See Bone, 77
S.W.3d at 833 (noting that in the majority of cases on a direct appeal, the trial court record is
not sufficiently developed to adequately reflect the failings of trial counsel). Further, having
reviewed the record, we cannot conclude that no competent attorney would employ the
possible strategy reflected in the record. After considering Powell's ineffectiveness claims,
we conclude they are without merit and overrule Powell's second, third, and fourth issues. 

Admission of Prior Felony Conviction


 In issue five, Powell asserts that the trial court erred in admitting an "unsigned
judgment," State's Exhibit 6, (10) as evidence of one of his two prior felony convictions. 
According to Powell, because the judgment was unsigned, it was interlocutory and not final. 
Powell concludes that the unsigned judgment should not have been used to enhance his
sentence.

 We must first address whether Powell preserved his complaint concerning the trial
court's alleged error in admitting an unsigned judgment into evidence during the punishment
phase of his trial for aggravated robbery. 

 To preserve error for review on appeal, an appellant must generally demonstrate from
the record that he made a complaint to the trial court through a timely request, objection, or
motion. Tex. R. App. P. 33.1(a)(1). "To avoid forfeiting a complaint on appeal, the party must
'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly
enough for the judge to understand him at a time when the judge is in the proper position to
do something about it.'" Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). By giving the trial judge this
information, the trial court and opposing counsel are allowed an opportunity to correct alleged
errors. Id. (citing Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)). 

 In examining the record, we find that Powell's complaint concerning the admission of
an incomplete judgment was not preserved for appeal. The record reflects that Powell signed
a stipulation pertinent to his prior burglary convictions, which includes the evidence by the
incomplete judgment. The stipulation stated: "State's Exhibit Numbers 6 & 7 are certified
copies taken from the records of the Institutional Division of the Texas Department of Criminal
Justice, which truly and accurately reflect the prior convictions of the Defendant." When the
State offered exhibit 6 into evidence, trial counsel stated, "I have no objection, Judge."

 In summary, the record reflects that Powell expressed no objection to the admission of
the incomplete judgment. Had he done so, trial counsel and the court would have been
afforded the opportunity to correct any error. Because he did not object at trial, Powell's
complaint about the admission of the incomplete judgment was not preserved for our review. 
Tex. R. App. 33.1(a)(1). Issue five is overruled. (11) 

Conclusion


 Having overruled each of Powell's five issues, we affirm the trial court's judgment. 

 AFFIRMED. 


 ___________________________

 HOLLIS HORTON

 Justice



Submitted on August 19, 2009 

Opinion Delivered December 2, 2009

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Carlos and Norma both speak Spanish. The record reflects that the officer who
investigated the robbery, Detective White, spoke English. Detective White indicates that
during his investigation, he relied on children present at Carlos's home who could speak both
languages to bridge their communication problems. When Carlos and Norma testified during
the trial, they did so with the assistance of an interpreter. 
2. The detectives testified that Powell's sister consented to their search; Powell's sister
was not called as a witness at the trial.
3. Although the statute governing the penalty for repeat and habitual felony offenders 
was amended after the commission of the alleged offense, there were no changes in the
section relevant to our analysis of this appeal. Compare Act of June 15, 2007, 80th Leg.,
R.S., ch. 340, 2007 Tex. Gen. Laws 627-28 with current version at Tex. Pen. Code Ann. §
12.42 (Vernon Supp. 2009). Therefore, we cite the current version. 

 

4. Although the legislature amended the definitions section of the Penal Code after the
commission of the alleged offense, there were no changes in the definition of "deadly
weapon." Compare Act of June 14, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws
887 with current version at Tex. Pen. Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).
Therefore, we cite the current version.
5. When asked if the individual who robbed him was in the courtroom, Carlos
responded: "I am not too sure. I'm not sure if I recognize him very clearly, but it might be
him."
6. When asked to point out the person who entered her home, Norma responded: "It's
him." She then described the clothing Powell was wearing to clarify that she intended to
identify the defendant as the person who had robbed them. 
7. During voir dire, trial counsel said: "You're also going to find out that one of the
things that my client did was sell items that he would take from people's garages. He is not
a robber. He was a burglar. He was a thief. He would steal something out of a garage and
go sell it to people and that's where the victim in this case, Mr. Garcia, met my client, was
in buying or entertaining buying a bicycle for one of his children from him." We also note
that the indictment alleged two prior offenses, both burglaries.
8. During final argument in the punishment phase of the trial, trial counsel argued: "But
you also look at the other side of the person and you say, well, Mike, there hasn't been any
testimony up here or anything that can give us a glimpse into what kind of person he was
other than being a criminal, right?"
9. Relief in appropriate cases for claims of ineffective assistance of counsel is generally
available through an application for writ of habeas corpus. See Thompson v. State, 9 S.W.3d
808, 814-15 (Tex. Crim. App. 1999).
10. State's Exhibit 6 appears to include only the first page of the Judgment Adjudicating
Guilt; the second page, which presumably would have contained a place for the trial court
to sign, was omitted from the exhibit. Therefore, while we do not necessarily agree that the
record demonstrates that the final judgment in Cause Number 51228 was unsigned, we do
agree that the State's evidence did not include a complete copy of the final judgment in
Cause Number 51228. 
11. Even if we were to construe Powell's issue as raising a complaint about whether 
sufficient evidence established his commission of the burglary referenced in State's Exhibit
6, we would conclude that the evidence was sufficient. Powell pled true to the allegation of
the indictment's that alleged he was previously convicted of burglary of a building on June
3, 1991. As a result, he cannot now complain about the sufficiency of the evidence to
support his two prior burglary convictions. Harvey v. State, 611 S.W.2d 108, 111 (Tex.
Crim. App. 1981) (en banc); Long v. State, 137 S.W.3d 726, 734 (Tex. App.-Waco 2004,
pet. ref'd).